E-FILED
Thursday, 15 July, 2010 02:13:39 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| EMERY W. JOHNSON, ) | |
|                    Plaintiff, ) | |
| v. ) | |
| ) | Case No. 08-2300 |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
|                    Defendant. ) | |

# ORDER

In June 2007, Administrative Law Judge ("hereinafter ALJ") Joseph Warzycki denied Plaintiff Emery Johnson's application for social security disability insurance benefits. ALJ Warzycki based his decision on his finding that Plaintiff was engaged in substantial gainful activity (hereinafter "SGA"). He also found that Plaintiff was capable of performing his past relevant work.

In September 2007, Plaintiff filed a Complaint for Judicial Review (#1) against Defendant Michael J. Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In May 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#7). In August 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#10). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#7)**.

## I. Background
### A. Procedural Background

Plaintiff filed an application for social security benefits, alleging disability beginning June 15, 2001, based on a number of complaints, including coronary artery disease, hypertension, and depression. (R. 22.) Plaintiff's date last insured was December 31, 2002. The Social Security Administration denied his application initially and on reconsideration. At Plaintiff's request, the ALJ held a hearing in June 2007. An attorney represented Plaintiff at the hearing. Plaintiff and vocational expert (hereinafter "VE") James Lanier testified at the hearing.

In June 2007, the ALJ issued a decision denying Plaintiff benefits, finding that he had engaged in SGA after his alleged onset date and that he was not disabled within the meaning of the Social Security Act. Assuming for the purposes of argument that there was some period at the end of 2002 that Plaintiff did not have SGA, the ALJ continued his analysis and found that Plaintiff could perform his past relevant work. As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. In October 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. In December 2008, Plaintiff appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g). Plaintiff seeks reversal. In the alternative, he asks the Court to remand the case for reconsideration.

The parties have consented to the exercise of federal jurisdiction by a United States Magistrate Judge.

### B. Factual Background

Plaintiff is 5'11" and weighs approximately 225 pounds. He was nearly 60 years old at the time of the hearing. Plaintiff completed nine years of school. He worked in the used car business. In this capacity, Plaintiff performed the roles of salesperson, mechanic, and bookkeeper. Plaintiff suffered an acute inferior wall myocardial infarction in June of 2001. During the insured period, he suffered from coronary artery disease, diabetes, and hypertension. Fatigue, chronic cough, and obesity exacerbated Plaintiff's condition. Plaintiff also claims that he suffers from depression.

The ALJ found that Plaintiff engaged in SGA after his alleged onset date. In 2002, earnings of $780 per month or $9,360 per year were sufficient for work to qualify as SGA. Plaintiff satisfied this requirement when he earned $11,307 in 2002 as a used car salesman. Plaintiff claims that a substantial portion of his earnings came from cars sold in 2001 and therefore should not count towards his 2002 earnings. However, he did not provide evidence that the earnings record was invalid or that he amended his tax return. Thus, the ALJ did not find this argument persuasive. Nevertheless, the ALJ continued the disability analysis,

"assuming for the purposes of argument only, that there was some period of time at the end of 2002 that the claimant did not have SGA." (R. 18.)

The ALJ found that Plaintiff suffered from a severe combination of impairments including coronary heart disease, diabetes, and hypertension. The ALJ did not consider Plaintiff's depression severe. At Step Three, the ALJ determined that Plaintiff's impairments did not meet the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ found that Plaintiff had the residual functional capacity to do light work, except that he should not have "concentrated exposure to moving machinery or unprotected heights because of the possibility of having a dizzy spell." (R. 21.)

The ALJ and the parties have provided detailed descriptions of the medical evidence and the Court will not repeat it here.

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.2d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

### III. Discussion

Plaintiff argues that the ALJ's decision should be reversed because (1) the ALJ's credibility rating was erroneous; (2) the RFC consideration was incomplete; and (3) the ALJ's Step Four consideration was erroneous.

### A. The ALJ's Credibility Determination

First, Plaintiff argues that the ALJ's credibility rating was erroneous. The ALJ based his credibility determination on (1) inconsistent evidence regarding depression, (2) Plaintiff's return to work after his onset date, and (3) insufficient reporting of symptoms. Plaintiff also contends that the ALJ misstated the evidence. Specifically, Plaintiff contends that the ALJ committed errors in logic because a lack of evidence regarding a condition does not indicate that no condition existed; having a job does not mean that a person is not disabled; and Plaintiff did not improperly report symptoms, but merely lacked the ability to see a doctor more frequently because he had no insurance.

#### 1. Evidence of Depression

First, Plaintiff contends that the ALJ misstated the evidence regarding depression. Plaintiff correctly notes that absence of evidence of depression during the insured period does not necessarily indicate the absence of the condition itself. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). Yet, neither does the absence of evidence prove the presence of depression or lend credibility to Plaintiff's assertion of such a condition. Plaintiff also notes that failure to seek treatment may be the result of the mental illness. But failure to seek treatment does not by itself establish the existence of a mental condition.

A review of the decision shows that the ALJ did not rely only on the absence of evidence of depression or Plaintiff's failure to seek treatment for this condition; instead, he noted inconsistent evidence regarding whether Plaintiff experienced depression during the insured period. Plaintiff testified that he suffered from depression and attempted suicide (R. 437-38) but he repeatedly denied depression when obtaining treatment for other injuries. (R. 135, 236, 246.) In addition, the State agency doctor reviewing the case in December 2004 found insufficient evidence of depression. (R. 294.) Subsequent information added to the record did not indicate treatment for depression during the insured period, but only in 2005, well after the date last insured. (R. 311.) This is consistent with Plaintiff's testimony that he began talking to a psychiatrist only in 2005 or 2006. (R. 439.) Thus, substantial evidence supports the ALJ's assessment regarding Plaintiff's claims of depression and the Court concludes that the ALJ properly considered the evidence related to depression when assessing Plaintiff's credibility. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (stating that an ALJ's credibility assessment must contain "serious errors in reasoning" to merit remand).

### 2. Plaintiff's Return to Work

Plaintiff also contends that the ALJ erred by relying on the fact that Plaintiff returned to work in assessing his credibility, as well as his RFC. Plaintiff notes that a return to work does not indicate a lack of disability. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("having a job is not necessarily inconsistent with a claim of disability"). Plaintiff states that the "ALJ rejects all of Plaintiff's testimony as to how he significantly cut down his time at work . . . letting his wife take over." (#8, p. 16.) He contends that the ALJ should have considered his return to work as supporting his credibility rather than undermining it.

The ALJ pointed out that, contrary to the statement in Plaintiff's petition that he was disabled beginning in June 2001, not only did Plaintiff return to work after this date, but he was "able to work at SGA." (R. 23, 419-20.) In April 2002, after the second surgery, Plaintiff's doctor stated that Plaintiff was back to his normal activities. (R. 243, 281.) Throughout the insured period, Plaintiff listed his occupation as owner of a used car business and his wife's occupation as housewife on patient intake forms. (R. 128, 157, 165.) Indeed, Plaintiff testified

that his wife did not take over until 2004 or 2005, and that even after the date last insured, he "remained active in the business." (R. 423, 430.) Based on this evidence, the ALJ did not err by considering Plaintiff's ability to work when assessing his credibility.

### 3. Insufficient Reporting of Symptoms

Next, Plaintiff contends that the ALJ erred by finding Plaintiff did not report his symptoms often enough because the ALJ neglected to take into account Plaintiff's limited insurance. This argument appears to be based on the ALJ's statement that the record "contains no compelling evidence that the claimant experienced a problem with dizziness prior to December 31, 2002." (R. 23.) However, Plaintiff presented no evidence that his financial situation prevented him from obtaining needed treatment or purchasing medication. In the absence of evidence indicating that Plaintiff's financial situation prevented him from obtaining treatment, the Court cannot conclude that the ALJ erred by considering the absence of evidence regarding the effects of Plaintiff's purported dizziness on his RFC. 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence.").

### 4. The ALJ Misstated the Evidence

Finally, Plaintiff contends that the ALJ misstated the evidence when he stated that Plaintiff "testified at the hearing that he is able to sit, stand, and walk without much problem." (R. 22.) At the hearing, Plaintiff testified several times about mobility problems. For example, Plaintiff stated that after his surgery "for a long time I, I couldn't [sit in a chair] because I'd be moving, I'd move around because . . . of my lower back would start hurting me." (R. 440.) Plaintiff also reported lower back pain when standing or walking, stating, "[w]hen I started walking if I walked very far then it would start paining me in the far back, the same thing, it would just get worse until I got to sit down. I'd either sit down or lean up against something." (R. 441.) In contrast to Plaintiff's testimony at the hearing, his doctors reported that he could stand and/or walk for about six hours in an eight-hour day. (R. 275.)

The Court agrees that the ALJ misstated Plaintiff's testimony regarding his ability to sit, stand, and walk. However, this was not the only reason the ALJ gave for his credibility

assessment. "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). In light of his other reasons for finding Plaintiff not credible, the ALJ's misstatement regarding Plaintiff's testimony does not provide a basis for concluding that the ALJ's assessment was patently wrong.

As noted above, when evaluating a credibility determination, courts give significant deference to the ALJ's assessment. *Urban*, 799 F. Supp. at 912. This deference is justified because the ALJ is present during the testimony to see and hear witnesses. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Thus, an ALJ's credibility assessment must contain serious errors in reasoning to merit remand. *Carradine*, 360 F.3d at 754. For these reasons, the Court concludes that the ALJ adequately explained his assessment of Plaintiff's credibility.

### B. Incomplete RFC Consideration

Plaintiff next argues that the ALJ's RFC consideration is incomplete because (1) the ALJ did not adequately consider all of the relevant evidence; (2) the ALJ did not consider the aggregate effect of Plaintiff's ailments; and (3) the ALJ relied only on the State agency doctor's opinion regarding the claim of mental illness and also misstated this opinion.

### 1. Incomplete Evidence

First, Plaintiff argues that the ALJ did not consider all of the evidence. Specifically, Plaintiff contends that the ALJ relied on the opinion of the State agency doctor and thus did not consider evidence added to the record (R. 333-71) after the State agency doctor's review on December 12, 2004. In particular, Plaintiff refers to "evidence that the first catheterization did not work and that Plaintiff continued to be very limited post-second catheterization, as

demonstrated by stress tests and myoview scans." (#8, p. 10.)  Defendant responds that any of the added information that relates to conditions prior to the date last insured merely duplicates evidence already in the record.

The Court has reviewed the evidence in question and finds that it does not support Plaintiff's arguments.  Furthermore, Plaintiff's health may not have been optimal after the second catheterization, however, no doctor suggests that the procedure was unsuccessful or that Plaintiff was "very limited." (R. 353.)  Indeed, Plaintiff's doctors report that he returned to "normal activities" after his second catheterization. (R. 337.)  Therefore, even though the record contains additional medical evidence for the period after the State agency doctor's report, that review encompassed all relevant information, and the ALJ did not err when he relied on this opinion.

Plaintiff also suggests that the ALJ erred when "[he] faults Plaintiff for not having an opinion as to his ability to work from a treating doctor" because "no treating doctor said he could return to work either." (#10, p. 15.)  However, a patient can only follow treatment that a doctor orders.  It is reasonable to assume that if the doctor had thought Plaintiff should not return to work for health reasons, he would have told Plaintiff.

### 2.  Failure To Consider Plaintiff's Combined Impairments

Plaintiff next argues that the ALJ did not take into account the aggregate of all Plaintiff's ailments, including his dizziness, fatigue, obesity, coughing, diabetes, and depression.

The ALJ explicitly considered the Plaintiff's claim of dizziness and limited Plaintiff's RFC accordingly. (R. 23.)  In making this determination, the ALJ relied on the review of State agency doctor Sandra Bilinsky.  The ALJ also explicitly addressed Plaintiff's claim of depression when determining RFC. (R. 23.)  The ALJ relied on the State agency doctor's report that she found no indication of mental impairment and noted Plaintiff's statements to his doctors denying depression.

8

Although the ALJ did not explicitly address Plaintiff's obesity, diabetes, or chronic cough (eventually attributed to allergies) in determining the RFC, he discussed these conditions at Steps Two and Three. (R. 18-21.) Furthermore, several healthcare advisors noted these conditions (R. 195, 235, 243, 257), and these references were sufficient to inform the ALJ of the conditions. In *Prochaska v. Barnhart,* the Seventh Circuit stated that, "[a]though the ALJ did not explicitly address Prochaska's obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). In *Skarbek v. Barnhart*, the Seventh Circuit noted that "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctor's opinions." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Consistent with this case law, the ALJ's consideration of Plaintiff's ailments sufficed because he relied on doctors who were aware of Plaintiffs conditions, including her obesity, diabetes, and chronic cough.

Finally, the medical tests do not indicate fatigue as Plaintiff claims. (#10-1, p. 12.) As evidence of fatigue, Plaintiff refers to the fact that he "can barely even do 5 minutes during a stress test." (#8, p. 12.) However, the stress tests ended not because of fatigue, but because Plaintiff reached the target heart rate. (R. 255, 316, 333.) Thus, the ALJ did not need to consider stress-test related fatigue in his RFC. Furthermore, the treating physicians commented on Plaintiff's general fatigue (R. 261), and therefore, the Court concludes that the ALJ's consideration of this factor is sufficient for the reasons explained above.

### 3. Reliance on the State Agency Doctor's Opinion

Plaintiff contends that the ALJ erred by relying solely on the State agency doctor's report regarding Plaintiff's mental limitations, when that doctor did not have the benefit of information provided later. As discussed above, the record lacked evidence of mental illness during the relevant time period. Furthermore, the additional evidence did not relate to the relevant time

9

period or it was duplicative. As a result, it would not have altered the State agent's determination. Thus, the ALJ did not err by relying on the State Agency doctor's opinion.

Plaintiff also contends that the ALJ misstated the doctor's opinion from the report when he concluded that Plaintiff had "no mental limitation." (#10, p. 12.) The Court notes that the State agency doctor checked the box for "insufficient evidence" (R. 282); there was no box for "no evidence." The doctor also stated as follows: "The only medical source according to the claimant is his family physician. The claimant alleges depression. There is insufficient evidence find them (*sic*) disabled as of the DLI." (R. 294.) In the decision, the ALJ stated that the State agency medical source "found no evidence of any type of mental impairment." (R. 23.) The Court concludes that this accurately reflects the State agency doctor's assessment. Plaintiff relied entirely on his own testimony of depression and attempted suicide in order to establish a mental limitation during the relevant time period. The ALJ discounted this testimony because of Plaintiff's credibility determination, discussed previously. Based on the evidence, the Court cannot conclude that the ALJ erred by relying on the State agency doctor's opinion.

### C. The ALJ's Step Four Finding

Finally, Plaintiff argues that the ALJ erred at Step Four by finding that Plaintiff could perform his past work. Specifically, he contends that the ALJ's hypothetical questions and characterization of Plaintiff's past work were inaccurate. At Step Five, Plaintiff argues that a finding of disability is required and the Court should reverse the Commissioner's decision and award benefits..

Plaintiff's contention that the hypothetical questions were inaccurate is based on the premise that the ALJ failed to consider the combination of Plaintiff's impairments and failed to account for Plaintiff's depression in the RFC. The Court has discussed these arguments and concluded that they lack merit.

Plaintiff also contends that the ALJ failed to properly analyze whether Plaintiff could perform his past job as a sales representative. Specifically, Plaintiff contends that the ALJ failed to account for the discrepancies between the Dictionary of Occupational Terms (hereinafter "DOT") and his past job because the ALJ improperly relied on the VE's testimony that Plaintiff could do his past job (1) even though it requires working around cars, which would be outside the scope of the RFC because cars constitute "hazards/large machines"; and (2) even though the DOT describes the sales representative job as semi-skilled work. Regarding the latter argument, the Court notes that the ALJ explained this discrepancy. (R. 460-61). In addition, the Court concludes that cars do not constitute the kind of "moving machinery" contemplated by the RFC, which states that Plaintiff should avoid concentrated exposure to moving machinery because of the possibility of having a dizzy spell.. Therefore, the VE's testimony that Plaintiff could perform his past job is not inconsistent with Plaintiff's RFC. Thus, the ALJ satisfied his burden to elicit a reasonable explanation for the conflict between the VE's testimony and the DOT, as required by SSR 00-4p. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

After reviewing the evidence in light of Plaintiff's arguments, the Court concludes that the ALJ's hypothetical questions were proper, the characterization of Plaintiff's past work was reasonable, and the ALJ did not err by relying on the VE's testimony. Accordingly, the Court concludes that the ALJ did not err at Step Four. As a result, the ALJ need not consider Plaintiff's arguments related to Step Five.

## IV. Summary

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#7)**.

ENTER this 15th day of July, 2010.

                                                      s/ DAVID G. BERNTHAL
                                                      U.S. MAGISTRATE JUDGE